UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-against-<br><br>HENRY MEJIA,<br><br>Defendant. | No. 17-CR-283 (LAP)<br><br>ORDER |

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Defendant Henry Mejia's motion for compassionate release, pursuant to 18 U.S.C. § 3582 (c)(1)(A), because of the COVID-19 pandemic. (See dkt. no. 406 ("Mot.").) The Government opposed the motion, (see dkt. no. 416), and Defendant did not file a reply. For the reasons set out below, the motion is DENIED.

I. **Background**

Between 2012 and 2015, a violent drug trafficking organization (the "DTO") operated on Davidson Avenue between West Tremont Avenue and West Burnside Avenue in the Bronx, New York. (See Presentence Investigation Report ("PSR"), dated July 18, 2018 [dkt. no. 156], ¶ 18.) The DTO sold significant quantities of heroin, crack cocaine, powder cocaine, marijuana, and other illegal narcotics, generating substantial profits for its leaders and significant sums for its members. (Id.) To prevent other drug-traffickers from selling on their territory, DTO members used and threatened violence. (Id.) Members used

1

and kept guns to maintain control over their territory, and many of the DTO members were also members of neighborhood street gangs. (Id. ¶¶ 18-19.)

Defendant Mejia was a manager of the DTO, supplying wholesale narcotics to the street-level sellers, collecting proceeds, ensuring dealers worked their shifts, and otherwise keeping order amongst the DTO members. (Id. ¶ 23.) On at least one occasion, in 2015, Mejia initiated a physical altercation with Felix Castillo, another member of the DTO, regarding money that Castillo owed Mejia for cocaine. (Id.)

Under the indictment, Mejia was charged with two counts: (1) conspiracy to distribute and possess with intent to distribute 1 kilogram and more of heroin, 280 grams and more of crack, and 5 kilograms and more of cocaine, in violation of 21 U.S.C. § 846 and § 841(b)(1)(A); and (2) possession of a firearm during, and in relation to, the aforementioned drug-trafficking conspiracy, in violation of 18 U.S.C. § 924(c). (See Indictment, dated May 10, 2017 [dkt. no. 2], ¶¶ 1-7.)

On April 26, 2018, Mejia pleaded guilty, pursuant to a plea agreement, to Count 1, i.e., conspiracy to distribute at least one but less than three kilograms of heroin. (PSR ¶ 6.) As part of his plea agreement, the parties stipulated that Mejia was a manager or supervisor of the DTO (but not an organizer or leader) and that Mejia used violence in furtherance of the

offense. (Id. ¶ 7(A)(3)-(4).)  The Court sentenced Mejia to 120 months' imprisonment and seven years of supervised release.[1]

On October 23, 2020, Mejia filed the instant motion for compassionate release, which the Government opposed.

**II. Applicable Law**

Defendant moves for a reduction of his term of imprisonment under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act of 2018, Pub. L. No. 115-391, § 603, 132 Stat. 5194, 5239 (2018).[2]  Under that provision, the Court may reduce Defendant's sentence if it finds that (1) "extraordinary and compelling reasons warrant such a reduction" and (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  The relevant Guidelines policy statement--Section 1B1.13--counsels that a reduction also is not proper unless "[t]he defendant is

---

[1] (See Judgment, dated Oct. 17, 2019 [dkt. no. 206].)  In addition to this offense conduct, Mejia was also convicted in 2002, in the United States District Court for the Northern District of Ohio, of conspiring to distribute crack cocaine, in violation of 21 U.S.C. § 846 and § 841(b)(1)(A).  (PSR ¶ 59.)  He was sentenced to ten years' imprisonment.  (Id.)

[2] A defendant may bring such motion after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).  Because Defendant requested compassionate release from the Bureau of Prisons and was turned down, he has adequately exhausted his administrative remedies.

3

not a danger to the safety of any other person or to the community."[3]

With respect to the "extraordinary and compelling reasons" requirement, the application notes to U.S.S.G § 1B1.13 provide three instances where such reasons may exist: (1) the Defendant has a terminal illness or serious medical condition that substantially diminishes his ability care for himself; (2) the Defendant is at least 65 years old, has served 10 years or 75 percent of his sentence, and is experiencing a serious age-related decline in health; or (3) the Defendant's family circumstances have changed such that the Defendant is the only available caregiver for a minor child or incapacitated spouse.[4]

Under the First Step Act, the Court may exercise its "discretion in determining what are extraordinary circumstances." United States v. Brooker, 976 F.3d 228, 234 (2d Cir. 2020).  But a court's finding such circumstances merely permits a defendant's release--it does not mandate it.  See, e.g., United States v. Ebbers, 432 F. Supp. 3d 421, 430

---

[3] U.S.S.G. § 1B1.13; see also United States v. Jordan, No. 1:19-CR-478-GHW, 2020 WL 4195353, at *2 (S.D.N.Y. July 16, 2020) ("The relevant policy statement is U.S.S.G. § 1B1.13.").

[4] U.S.S.G. § 1B1.13 app. n.1(A)-(C).  The application notes also allow a catchall condition where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the Defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."  Id. at app. n.1(D).

4

(S.D.N.Y. 2020); United States v. Israel, No. 05-CR-1039 (CM), 2019 WL 6702522, at *11 (S.D.N.Y. Dec. 9, 2019). Ultimately, "[t]he defendant has the burden to show he is entitled to a sentence reduction." United States v. Lisi, 440 F. Supp. 3d 246, 249 (S.D.N.Y. 2020).

Moreover, even if the defendant establishes extraordinary or compelling circumstances, the Court must still consider the § 3553(a) sentencing factors "to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Those factors include, inter alia, "(1) the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed ... to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; and (3) "the need for the sentence imposed ... to protect the public from further crimes of the defendant." Id. § 3553(a)(1)-(2).

### III. Discussion

Defendant has not sustained his burden of demonstrating "extraordinary and compelling" reasons for release. He is 42 years old, (see PSR at 2), does not report any health challenges, and his medical records do not disclose any.[5] In requesting compassionate release, Defendant relies first on the

---

[5] Defendant's medical records were filed under seal with the Court.

5

general risks associated with the COVID-19 pandemic.  But those risks alone are insufficient to warrant release.  See United States v. Nwankwo, No. 12 CR 31 (VM), 2020 WL 2490044, at *1 (S.D.N.Y. May 14, 2020) (collecting cases).  Additionally, Defendant alleges shortcomings on FCI Morgantown's part in protecting inmates from the spread of COVID-19.[6]  While one might have hoped for more rigorous separation procedures, Defendant has not demonstrated "extraordinary and compelling circumstances warranting release" within the meaning of U.S.S.G § 1B1.13, and he has certainly not demonstrated a medical condition "that substantially diminishes" his ability "to provide self-care within the environment of a correctional facility" within the meaning of Application Note 1 to that section.

Even if Defendant had demonstrated "exceptional and compelling circumstances warranting release," the Court would not exercise its discretion to grant the motion because it would be inconsistent with the § 3553(a) factors.  Defendant was a manager of a violent drug trafficking organization that

---

[6] Specifically, Defendant suggests that FCI Morgantown's testing protocol was insufficient.  He points to two incidents in particular.  First, on September 17, 2020, FCI Morgantown placed two inmates who voluntarily surrendered, but were not tested for COVID-19, into "Administrative Segregation[ ] with other inmates from general population."  (Mot. at 5.)  And second, "[o]n that same day, three other inmates who were housed in Administrative Segregation were also moved to Defendant's housing unit into general population without the three being tested for the virus."  (Id. at 6.)

distributed vast quantities of dangerous narcotics onto the streets of New York.  He admitted that he himself used violence in furtherance of those drug trafficking activities.  To release him after serving less than half of his sentence would not provide adequate punishment for the offense or promote respect for the law.  Also, Defendant's prior convictions, which include a ten-year sentence for drug dealing, have plainly not deterred him from returning to the exact same criminal behavior.  Based on this record, the Court finds that Defendant would constitute a danger to the community if released.

## IV. Conclusion

For the reasons set out above, Defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) [dkt. no. 406] is <u>DENIED</u>.  The Clerk of the Court shall (1) close the open motion and (2) mail a copy of this order to Defendant.

**<u>SO ORDERED.</u>**

Dated:    June 1, 2021
         New York, New York

*[signature: Loretta A. Preska]*

LORETTA A. PRESKA
Senior United States District Judge